IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JUAN J. TORRES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 1:19-cv-01171 (RDA/JFA) |
| CYNET SYSTEMS, INCORPORATED, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Cynet Systems's ("Defendant") Motion for Summary Judgment ("Motion"). Considering the Motion, the Memorandum in Support of the Motion (Dkt. 28), Plaintiff Juan J. Torres's ("Plaintiff") Opposition to the Motion (Dkt. 31), and Defendant's Reply (Dkt. 32), and for the following reasons, it is hereby ORDERED that the Motion is GRANTED.

### I. BACKGROUND

#### A. Factual Background

Defendant is a recruiting and staffing firm headquartered in Sterling, Virginia. Dkt. 28-1, ¶ 3. The firm recruits consultants to work at companies in the software, information technology, and engineering industries. *Id*. On January 8, 2018, Plaintiff submitted an application to Defendant for a "DecOps engineer/architect" position with HCL America. Dkt. 28-2, 5-6. When he applied for that position, Plaintiff understood that Defendant was a staffing agency and that he would perform substantive work for HCL America and HCL America's client, Novartis. *Id*. at 8-9. In applying for the position, Plaintiff indicated that he was "willing to relocate and travel at [ ] [his] own expense." *Id*. at 10.

1

Defendant then submitted Plaintiff's application materials to HCL America. Dkt. 28-1, ¶ 6. On January 11, 2018, HCL America, through its client, Novartis, interviewed Plaintiff. *Id*. During the interview, Plaintiff was told that would be referred for the job.[1] Dkt. 28-2, 11.

Subsequent to the interview, Defendant provided Plaintiff with an Independent Contractor Agreement ("Agreement"), which is the contract that is at issue in this matter. Dkt. 28-1, ¶ 9. It is not reasonably disputed that Plaintiff read and understood the Agreement before he signed it on January 17, 2018. Dkt. 28-2, 14-16. The following clauses were included in the Agreement and are relevant here:

> This . . . Agreement [ ] is entered into as of the 01/17/2018, (the "**Effective Date**")
> . . . .
>
> \* \* \* \*
>
> **1.1 Term.** This Agreement will be effective from the Effective Date until terminated as provided in this Agreement.
>
> \* \* \* \*
>
> **1.2 Scope of Services.**
>
> > **1.2.1 Scope of the Services.** During the term of this Agreement. [ ] [Plaintiff] will perform the services (the **"Services"**) described in the Statement of Work set forth as **Exhibit A** (attached and incorporated into this Agreement) (the "**Statement of Work**"), which may be amended in writing from time to time. [ ] [Plaintiff's] failure to use his best efforts to complete the Services will constitute a material breach of this Agreement. [ ] [Defendant's] representative designated in the Statement of Work (the "**Company Representative**") will provide [ ] [Plaintiff] information appropriate for [ ] [Plaintiff] to perform the Services.
>
> \* \* \* \*
>
> **1.3 Conditions Precedent.**

---

[1] The record is not clear as to the interviewer's name and during his deposition, Plaintiff could not recall the name of the individual that interviewed him. *See* Dkt. 28-2, 11.

> **1.3.1 Client Agreement to Hire.** [ ] [Plaintiff] acknowledges and agrees that if [ ] [Defendant's] client for whom [ ] [Plaintiff] is going to provide Services under this Agreement, or any incorporated Statement of Work, shall determine at any time prior to the start of [ ] [Plaintiff's] performance of Services that it no longer wishes to have [ ] [Plaintiff] provide Services to it, this Agreement shall be null and void.
>
> **1.3.2 Background Check and Drug Testing.** [ ] [Plaintiff] shall bear the expense of background verification and Drug testing initiated by CSI as per client requirement. The cost for the same shall be deducted from the first paycheck.
>
> [ ] [Plaintiff] acknowledges and agrees that the offer to contract for Services under this Agreement is contingent on the successful clearance of a background check and drug test. This Agreement will be void in the event the background check is not cleared.
>
> \* \* \* \*
>
> **6.1 <u>Termination</u>**. This Agreement will continue indefinitely if not sooner terminated in accordance with <u>Section 6.1</u>. The Parties may terminate this Agreement as follows: . . . (c) by [ ] [Defendant] with ten (10) business days written notice to [ ] [Plaintiff] for any reason not specified in <u>Section 6.1(d)</u>, including where [ ] [Defendant's] client determines it no longer wants Contractor to provide services . . . . .

Dkt. 28-3, 2, 5. Plaintiff claims that on January 22, 2018, he spoke with one of Defendant's employees, Ankur Sharma ("Mr. Sharma"). Dkt. 31, 2. Plaintiff explains that during that conversation, Mr. Sharma told Plaintiff that he was cleared and should move to Fort Worth, Texas. *Id*. Plaintiff, who was then a Eustis, Florida resident, arrived in Fort Worth, Texas on January 25, 2018, expecting to commence work on January 29, 2018. *Id*. at 22; 28-5, 1.

On February 5, 2018, "Varun," one of Defendant's employees, asked Jaya Vadodaria ("Ms. Vadodaria"), one of HCL America's employees, when Plaintiff would report for his first day of work.[2] Dkt. 228-9, 2. On February 6, 2018, and February 8, 2018, Plaintiff spoke with Mr. Sharma, one of Defendant's employees, and he told Plaintiff that he still needed to "wait" to begin

---

[2] It is not clear from the record what "Varun's" last name is.

work. *See id*. at 29; *see also* Dkt. 28-1, ¶ 17. On February 8, 2018, Ms. Vadodaria responded to Varun's request for a status update, indicating that HCL America "w[ould] not be able to onboard [ ] [Plaintiff] as [ ] [it] d[id] not have a confirmation from" Novartis. *Id*. The parties disagree regarding whether Plaintiff ever received notice that he would not be needed for the position. *See* Dkt. Nos. 31, 3; 28-1, ¶ 19.

B. Procedural Background

On September 11, 2019, Plaintiff filed his original Complaint in the instant matter. Dkt. 1. Defendant moved to dismiss the Complaint for failure to state a claim. Dkt. 5. Without opposing the Motion to Dismiss the original Complaint, Plaintiff filed an Amended Complaint. Dkt. 9. In turn, Defendant withdrew its Motion to Dismiss the original Complaint, and moved to dismiss the Amended Complaint. Dkt. 10. The Court granted in part and denied in part Defendant's Motion to Dismiss the Amended Complaint—granting that motion with respect to the Plaintiff's implied covenant of good faith and fair dealing claim, and denying the same with respect to the breach of contract claim. Dkt. 16.

Defendant now moves for summary judgment on the remaining count in the Amended Complaint. Dkt. 27. Plaintiff opposes Defendant's Motion. Dkt. 31.

II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the

burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson*, 477 U.S. at 247-28. A "material fact" is one that might affect the outcome of a party's case. *Id*. at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material fact" arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 248. Rule 56(e) requires the non-moving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

III.  ANALYSIS

In his Amended Complaint, Plaintiff alleges that Defendant breached two provisions of the Agreement. *See* Dkt. 9, ¶ 14. First, Plaintiff claims that Defendant breached Section 1.2 of the Agreement that provided that Defendant's representative would "provide to [ ] [Plaintiff] information appropriate for [ ] [Plaintiff] to perform the Services" contemplated by the Agreement. *See id*. It appears that Plaintiff's theory of complaint is that Defendant breached the Section 1.2 provision when its representative told Plaintiff that "HCL America accepted [Defendant's]

5

services to start around January 29, 2019" and subsequently failed to inform Plaintiff when HCL America indicated that they no longer needed Plaintiff's services. *Id*.

Second, in the Amended Complaint,[3] Plaintiff maintains that Defendant breached Section 6.1(c) of that same Agreement. *Id*. Section 6.1(c) indicates that "[t]he Parties may terminate [the] Agreement as follows: . . . (c) by [Defendant] with ten (10) business days written notice to [Plaintiff] for any reason not specified in Section 6.1(d) including where [Defendant's] client determines it no longer wants [Plaintiff] to provide services[.]" Dkt. 28-3, 5. Essentially, Plaintiff believes that Defendant breached Section 6.1(c) when it did not give him the requisite 10-day notice that HCL America no longer needed his services. Dkt. 9, ¶ 14.

Defendant moves for summary judgment arguing that the Agreement was null and void, and argues that therefore, there is no genuine issue of material fact. *See generally*, Dkt. 28. According to Defendant, because the Agreement set forth that "if, at any time prior to Plaintiff starting his performance of services, [ ] [Defendant's] client decided that it no longer wished to have Plaintiff provide services, then the [A]greement would be null and void." *Id*. at 1, 11-12 (citing Dkt. 28-3, 1). Indeed, Section 1.3.1 of the Agreement provided that as one of the "Conditions Precedent" to that Agreement, if HCL America determine[d] at any time prior to the start of [ ] [Defendant's] performance of Services that it no longer wishe[d] to have [ ] [Defendant] provide Services to it, th[e] Agreement shall be null and void." *See id*. In signing the Agreement, Plaintiff indicated that he "acknowledge[d]" and "agree[d]" to that provision. *Id*.

Yet, Plaintiff argues that summary judgment is not appropriate because he believes there are genuine issues of material fact. *See generally*, Dkt. 31. He asserts that because Defendant

---

[3] Plaintiff seems to abandon this argument in his Opposition to Defendant's Motion. *See generally* Dkt. 31.

breached Section 1.2 of the Agreement before HCL America indicated that it no longer needed Plaintiff's services, Defendant "committed the first material breach" of the Agreement and thus "cannot [ ] demand performance of the contract against" Plaintiff. Dkt. 31, 2. Plaintiff urges that Defendant breached when Mr. Sharma told Plaintiff on January 22, 2018, that Plaintiff was "cleared to move and should move to Fort Worth" to begin work with HCL America. *Id.*

For the reasons that follow, the Court finds that summary judgment is appropriate because there is no genuine issue of material fact.

In Virginia, "[t]o prove breach of contract, [a] [p]laintiff[ ] must show 1) a legally enforceable obligation of [a] [d]efendant[ ] to [a] [p]laintiff[ ], 2) breach of that obligation, and 3) damage arising from the breach." *Simpkins v. Am. Modern Home Ins. Co.*, No. 1:17-cv-0144, 2018 WL 1383843, at *3 (E.D. Va. Mar. 16, 2018) (citing *Filak v. George*, 267 Va. 612, 614 (Va. 2004)). As this Court has found, under Virginia law, "'[a] condition precedent calls for the performance of some act, or the happening of some event after the terms of the contract have been agreed upon, before the contract shall take effect.'" *Hammond v. Pac. Mut. Life Ins. Co.*, 159 F. Supp. 2d 249, 254 (E.D. Va. 2001) (citing *Smith v. McGregor*, 237 Va. 66 (1989)). When contracts are subject to a condition precedent, "'the contract is made in form, but does not become operative as a contract until some future specified act is performed, or some subsequent event occurs." *Hammond*, 159 F. Supp. 2d at 254 (citing *Morotock Ins. Co. v. Fostoria Novelty Co.*, 94 Va. 361 (Va. 1897)). "As a general rule, therefore, '[a] term that makes an event a condition of one party's duty does not of itself impose a duty on the other party that the event occur, and the nonoccurrence of a condition is therefore not of itself a breach of contract by that other party.'" *Rastek Constr. & Dev. Corp. v. Gen. Land Comm. Real Estate Cot., LLC*, 294 Va. 416, 426 (Va. 2017) (citing 2 E. Allan Farnsworth, Farnsworth on Contracts § 8.3, at 421-23 (3d ed. 2004)).

A review of Section 1.3.1 the Agreement clearly indicates that the parties contracted for the condition precedent that the Agreement would be "null and void" should HCL America "determine at any time prior to the start of [ ] [Plaintiff's] performance of Services that [ ] [it] no longer wish[ed ] to have [ ] [Plaintiff] provide Services to it[.]" *See* Dkt. 28-3, 2. Plaintiff argues that Defendant's recitation of the facts "ignores the evidence showing that [ ] [Defendant] erroneously informed [ ] [Plaintiff] that he could move to Texas on January 22, 2018[.]" Dkt. 31, 1. He also contends that Defendant "fails to acknowledge that [ ] [Plaintiff] sent an email to [ ] [Defendant] on February 12, 2018, . . . to which [ ] [Defendant] failed to respond, making it clear that he had not been informed that HCL America had not on boarded him to start his IT position." *Id*. But it is undisputed that (1) HCL America indicated that it could not move forward with onboarding Plaintiff; (2) HCL America came to this decision before Plaintiff began working; and (3) the parties contracted for this condition precedent in the Agreement. Considering this, the Court finds that the condition precedent was met.

The Court is sympathetic to Plaintiff's circumstances. Plaintiff moved from his home in Florida in anticipation of beginning his new job in Texas. Unfortunately, even if Defendant told Plaintiff to move to Fort Worth and failed to inform Plaintiff that HCL America no longer wanted Plaintiff's services, under the terms of the Agreement, and the governing law, those circumstances do not present genuine issues of material fact. Simply put, the parties agreed to a condition precedent, and the facts that Plaintiff highlights are regrettably inconsequential in light of this condition precedent.

It is true, as Plaintiff notes, that generally "a party who commits the first breach of a contract is not entitled to enforce the contract." *All Am. Ins. Co. v. James River Petroleum, Inc.*, No. 3:21-cv-8, 2021 WL 2284608 at *4 (E.D. Va. June 4, 2021) (citing *Horton v. Horton*, 254 Va.

111, 115 (Va. 1997)). But inherent in that principle is that there is an operative contractual provision to enforce. At the point of the alleged breach, the parties had settled upon the terms of the Agreement, subject to the condition precedent. *See Hammond*, 159 F. Supp. 2d at 254. The distinction between a condition precedent and a contractual promise is integral. *See In re LCS Homes, Inc.*, 103 B.R. 736, 745 (Bankr. E.D. Va. 1989). In Virginia:

> [a] mere condition precedent is not the same thing as an affirmative contractual promise or duty. A "condition" is "[a] future and uncertain event on which the existence or extent of an obligation or liability depends" or "an uncertain act or event that triggers or negates a duty to render a promised performance." Black's Law Dictionary 354 (10th ed. 2014). On the other hand, a "duty" is defined as "[a] legal obligation that is owed or due to another and that needs to be satisfied" or "that which one is bound to do, and for which somebody else has a corresponding right." *Id*.

*Rastek Const. & Dev. Corp.*, 294 Va. 416, 429 (Va. 2017). Stated differently, "a condition precedent is an event, which must exist or occur before a right to immediate performance arises under the contract. The nonoccurrence of a condition precedent relieves the parties of their contractual liabilities unless the nonperformance was caused by one of the parties to the contract." *Id*.

In many circumstances, a condition precedent requires that something be affirmatively done in order to render a contract operative. But under this Agreement, the condition precedent was essentially an omission—the Agreement would be operative *assuming* that HCL America did not indicate that it did not need Plaintiff's services. Based upon the terms that these parties were obligated to under the contract, Defendant had no obligations to Plaintiff if HCL America backed out before Plaintiff began to work. So, under these nuanced circumstances, the occurrence of the condition precedent relieved these parties of their contractual liabilities unless the occurrence of the condition precedent was caused by one of the parties to the contract. Based upon the facts in the record, the occurrence at issue was not caused by either of the parties. The record reflects that

9

the occurrence was attributable to HCL America, and HCL America alone,—a non-party—thus, the Court finds that the parties were relieved of their obligations under the Agreement—including the requirements set forth in Section 1.2. Accordingly, the points that Plaintiff raises do not present genuine disputes of material fact because they do not suggest an issue concerning "facts that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *Hooven-Lewis*, 249 F.3d 259, 265 (4th Cir. 2001).

It is not addressed in his Opposition brief, and therefore, it is unclear whether Plaintiff desires to proceed on his theory that Defendant breached Section 6.1(c) of the Agreement, which required Defendant to provide Plaintiff with 10 "business days written notice" if Defendant needed to terminate the Agreement because HCL America "determine[ ] [it] no longer want[ed] [ ] [Plaintiff to] provide Services." *See* Dkt. Nos. 28-1, 5; 9, ¶ 14. To the extent that he persists with that argument, the Court finds that theory of liability also fails to present a genuine issue of material fact. From the facts presented, it does seem that Defendant failed to provide Plaintiff with 10 business days of written notice that HCL America did not wish to proceed with his employment. However, Section 6.1 contemplates termination of the parties' obligations under the Agreement as opposed to a condition precedent to the effectuation Agreement. Again, although formed, the Agreement was not "operative as a contract," *Hammond*, 159 F. Supp. 2d at 254, until the condition precedent was addressed. And while termination required that notice be given, the condition precedent at issue here did not. Accordingly, the Court finds Plaintiff's theory of liability under Section 6.1(c) does not present a genuine issue of material fact such that the case should advance to trial.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion (Dkt. 27) is GRANTED.

The Clerk is directed to enter judgment for Defendant and close this civil action.

It is SO ORDERED.

Alexandria, Virginia
July 9, 2021

/s/
Rossie D. Alston, Jr.
United States District Judge